# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KERRI S. KUHLMANN,
Appellant,

v.

DEPARTMENT OF LABOR,
Agency.

DOCKET NUMBER
DC-1221-17-0437-R-1

DATE: June 20, 2024

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Kerri S. Kuhlmann</u>, Arlington, Virginia, pro se.

<u>Matthew Babington</u>, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication of this appeal.

### FINAL ORDER

¶1      The appellant filed a petition for review of the initial decision in the underlying matter, *Kuhlmann v. Department of Labor*, MSPB Docket No. DC-1221-17-0437-W-1, which denied her request for corrective action in this individual right of action (IRA) appeal. On January 23, 2024, the Board issued

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

an order providing that the initial decision became the final decision of the Board because Chairman Harris, then one of only two Board members in office, had recused herself from consideration of the appeal. *Kuhlmann v. Department of Labor*, MSPB Docket No. DC-1221-17-0437-W-1, Order (Jan. 23, 2024); *see* 5 C.F.R. § 1200.3(b). On March 26, 2024, Vice Chairman Limon reopened the final decision pursuant to 5 U.S.C. § 7701(e)(1), to permit the Board, once a third member had been confirmed, to issue a decision on the appellant's petition for review. *Kuhlmann v. Department of Labor*, MSPB Docket No. DC-1221-17-0437-R-1, Reopening File, Tab 1. Member Kerner was sworn into his duties as a Board member on June 3, 2024. Accordingly, we now consider the reopened appeal.[2]

¶2    Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to clarify when a claimed hostile work environment constitutes a cognizable personnel action in an IRA

---

[2] Upon further consideration of the circumstances, as well as the expiration of pertinent time frames contained in the Ethics Agreements she signed in connection with her Chairman and Member nominations, Chairman Harris has revoked her prior recusal and has fully participated in the disposition of this appeal.

appeal, as provided in *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, we AFFIRM the initial decision.

¶3 The following facts, as further detailed in the initial decision, are not disputed. The appellant holds the GS-14 position of Pension Law Specialist in the Employee Benefits Security Administration's Office of Regulations and Interpretations (ORI), Division of Coverage, Reporting, and Disclosure (DCRD), and is domiciled in Washington, D.C. Initial Appeal File (IAF), Tab 59 at 5, Tab 85, Initial Decision (ID) at 2. The DCRD Chief was her first-level supervisor, and the ORI Director was a higher-level manager. ID at 2-3. The majority of the instant IRA appeal involves the individuals who, starting in late 2011, occupied those positions.

¶4 In May 2016, after years of conflict with her supervisory chain and at least one coworker, along with complaints about the same, the appellant filed a whistleblower retaliation claim with the Office of Special Counsel (OSC). ID at 14. OSC closed her complaint in February 2017, and this IRA appeal followed. ID at 14; IAF, Tab 1. The administrative judge held a 7-day hearing before denying the appellant's request for corrective action.

¶5 The administrative judge found that the appellant presented nonfrivolous allegations of 32 disclosures within the Board's jurisdiction but only proved that 10 of those were protected. ID at 17-79, 88. Those protected disclosures were Disclosures 2-4, 6, 15-18, 22, and 27.[3] ID at 88. She further found that the appellant was subject to four relevant personnel actions—her Fiscal Year 2014 (FY 14) performance appraisal, the denial of several transfer requests, a

---

[3] As the administrative judge explained, the appellant's alleged disclosures are not identified in a consistent manner throughout the record. They were initially identified with a letter and number, then identified with numbers 1-45, after which the appellant withdrew several and the administrative judge concluded that there were a total of 32 within the Board's jurisdiction. ID at 16; *see, e.g.*, IAF, Tab 57 at 11-46, Tab 74 at 3-7. Accordingly, the administrative judge discussed the appellant's disclosures using that numbering—Disclosures 1-32. ID at 16-79. The appellant's petition for review followed that same formatting. Petition for Review File, Tab 5 at 12. For the sake of consistency, we will as well.

significant change in working conditions, and a letter of reprimand. ID at 80-81, 83-86, 88. While the appellant alleged that she was subject to additional personnel actions, such as a threat of counseling and a hostile work environment, the administrative judge found that the appellant failed to prove that these matters constituted personnel actions within the purview of the whistleblower statute. ID at 81-83, 85-86.

¶6    For those disclosures and personnel actions that remained, the administrative judge found that the appellant met her burden of proving the contributing factor criterion based upon the knowledge/timing test. ID at 86-90. Nevertheless, she found that the agency met its burden of proving that it would have taken the same actions in the absence of the appellant's protected disclosures. ID at 90-97. The appellant has filed a petition for review. Petition

for Review (PFR) File, Tab 5.[4] The agency has filed a response, PFR File, Tab 11,[5] and the appellant has replied, PFR File, Tab 16.[6]

## The administrative judge properly denied the appellant's motion for sanctions and her request for a subpoena.

*Motion for sanctions*

¶7 During discovery, the parties filed competing motions to compel pertaining to specific discovery requests. IAF, Tabs 27-28, 31-33. The administrative judge

---

[4] Prior to filing her petition, the appellant requested leave to exceed the applicable 30-page length limitation and submit a petition totaling 77 pages. PFR File, Tab 3. The Clerk of the Board granted the request, in part, setting the length limitation of the appellant's petition at 60 pages. PFR File, Tab 4. After submitting a 58-page petition for review, the appellant filed a motion for leave to file an additional pleading, to request that the administrative judge be disqualified from further participation in this appeal due to bias. PFR File, Tab 9. That request is denied. *See Sabio v. Department of Veterans Affairs*, 124 M.S.P.R. 161, ¶¶ 11-13 (2017) (denying an appellant's motions to submit additional pleadings because, *inter alia*, she had already been afforded ample opportunity to present her arguments on review).

[5] After the agency's response, but before the appellant's reply, the appellant filed another motion for leave to submit an additional pleading—this time to strike portions of the hearing transcript attached to the agency's response on the basis that it is unofficial or otherwise fails to fully represent pertinent testimony, and to object to the agency's response on the basis that the agency used 10 point font for its footnotes and exceeded the Board's 7,500 word limitation. PFR File, Tab 12; *see* 5 C.F.R. § 1201.114(h) (requiring that pleadings on review use no less than 12 point typeface and setting the length limitation for both petitions for review and responses to a petition for review at the lesser of 30 pages or 7,500 words, absent a grant of leave to exceed those limitations for exceptional circumstances). This motion is also denied. *See Sabio*, 124 M.S.P.R. 161, ¶¶ 11-13. Regarding the selected portions of transcript attached to the agency's response, the official hearing transcript is included in the record, in its entirety, and we will exclusively refer to it as needed. *See* Hearing Transcript, Day 1-Day 7. Regarding the typeface and length of the agency's response— only 23 pages, but approximately 8,300 words—while technically noncompliant with the Board's regulations concerning the word count, we will not strike the pleading under these circumstances, where the appellant was allowed to, and did submit, a 58-page petition for review. *See* PFR File, Tab 11 at 4-26.

[6] In yet another motion for leave to submit an additional pleading, the appellant requests permission to present arguments pertaining to decisions in other cases that have been issued since her reply brief. PFR File, Tab 17. This included our nonprecedential decisions in *Hornsby v. Federal Housing Finance Agency*, MSPB Docket No. DC-0752-15-0576-I-2, Final Order (Apr. 28, 2022), and *Addo v. Department of the Air Force*, MSPB Docket No. DC-0752-16-0427-I-1, Final Order (May 4, 2022), as well as the

issued one order, which granted in part each of those motions. IAF, Tab 34. The parties later filed competing motions for sanctions, with each alleging that the other had failed to comply with the administrative judge's order. IAF, Tabs 41, 47, 49, 55-56, 64-65. The administrative judge denied both motions. IAF, Tabs 50, 74 at 1-2.

¶8      The appellant's motion for sanctions alleged that while the administrative judge granted her motion to compel concerning Document Request Nos. 3 and 11, and the agency provided more than 14,000 pages worth of responsive documents, the agency's response was incomplete. IAF, Tab 34 at 3-5, Tab 55 at 4-11. For example, while Document Request No. 3 sought certain electronic communications by or among more than a dozen officials over a period of about 5 years, the appellant asserted that the agency produced none from one of those officials. IAF, Tab 55 at 6. The appellant also alleged that the agency produced no communications dated after May 13, 2016, the end date identified in the administrative judge's original order, even though the administrative judge later amended that order to set an end date of September 2016. *Id*.; *see* IAF, Tab 34 at 3-4, Tab 37 at 5, Tab 38 at 1.

¶9      The agency opposed the appellant's motion for sanctions. IAF, Tab 64. Among other things, the agency argued that sanctions were not warranted because the appellant had requested them without first informing the agency of the perceived deficiencies and providing an opportunity to make any necessary corrections. *Id*. at 4. The administrative judge agreed. She concluded that sanctions were not warranted because the agency worked diligently to respond to Document Request Nos. 3 and 11, and the appellant should have worked with the agency if she perceived any associated deficiencies. IAF, Tab 74 at 1-2. The appellant requested reconsideration, but the administrative judge also denied that

precedential decisions in *McGuffin v. Social Security Administration*, 942 F.3d 1099 (Fed. Cir. 2019), and *Sharpe v. Department of Justice*, 916 F.3d 1376 (Fed. Cir. 2020). This motion is similarly denied. We have considered each of the decisions cited but do not find additional arguments about them warranted.

request. Hearing Transcript, Day 1 (HT1) at 4 (ruling by the administrative judge on the record denying the reconsideration motion).

¶10    On review, the appellant has generally alleged that the administrative judge erred in denying the motion for sanctions. PFR File, Tab 5 at 7-8. We disagree. The imposition of sanctions is a matter within an administrative judge's sound discretion and, absent a showing that such discretion has been abused, the administrative judge's determination will not be found to constitute reversible error. *El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 16 (2015), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016). In this case, we find no such abuse of discretion. We instead find the administrative judge's reasoning for denying the appellant's request for sanctions persuasive. *See* 5 C.F.R. § 1201.71 (recognizing an expectation that parties will start and complete discovery with a minimum of Board intervention).

*Subpoena request*

¶11    As will be further discussed below, the appellant alleged that the DCRD Chief committed a battery on her in February 2016. An associated report from the Department of Homeland Security's Federal Protective Service (FPS) is included in the record. IAF, Tab 61 at 50-54. However, the appellant asked that the administrative judge issue a subpoena for the hearing testimony of a particular FPS agent. IAF, Tab 51 at 4-6. The administrative judge denied the request because the witness testimony would have been duplicative of a document in the record and further testimony was irrelevant. IAF, Tab 53 at 1.

¶12    On review, the appellant argues that this FPS agent was a material witness and the administrative judge erred in disallowing him. PFR File, Tab 5 at 8. According to the appellant, his testimony was material to the question of whether the appellant had a reasonable belief that she disclosed wrongdoing in connection with Disclosures 29-32, ones involving the alleged battery. *Id*. We are not persuaded.

¶13      We find that the administrative judge did not abuse her discretion. *See Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 14 (2010) (analyzing an administrative judge's denial of a subpoena for a witness under an abuse of discretion standard). No subpoena was necessary for this witness because he was a Federal employee and, in any event, the appellant ultimately chose not to request his testimony. IAF, Tab 51 at 4, Tab 68 at 56-62; *see Lee*, 115 M.S.P.R. 533, ¶ 14 (observing that subpoenas are not ordinarily required to obtain the appearance of Federal employees as witnesses and finding, as to a non-Federal employee witness, that no subpoena was necessary because the administrative judge denied the appellant's request to call him). Accordingly, we discern no error in the administrative judge denying the request to subpoena the FPS agent.

The appellant has failed to present sufficiently sound reasons to overturn the administrative judge's credibility findings.

¶14      The appellant's petition for review contains general arguments about the administrative judge's credibility findings. PFR File, Tab 5 at 8-12. We will address these general credibility arguments now, though we will further discuss credibility below, as needed, in concert with our discussions of the parties' respective burdens.

¶15      To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). In *Hillen*, the Board articulated a list of several factors that may be relevant, including a witness's demeanor. *Id*. The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has explained that the Board "is not free to overturn an administrative judge's demeanor-based credibility findings merely because it disagrees with those findings." *Haebe v. Department of Justice*, 288 F.3d 1288, 1299 (Fed. Cir. 2002). Instead, the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Id*.

at 1301. Additionally, the Federal Circuit has recognized that the Board should give deference not only to an administrative judge's credibility findings that explicitly rely on witness demeanor, but also those that are "intertwined with issues of credibility and an analysis of [a witness's] demeanor at trial." *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016).

¶16 In this case, the administrative judge made extensive credibility findings, particularly ones concerning testimony of the appellant, the DCRD Chief, and the ORI Director, and those credibility findings were partially based on witness demeanor. *E.g.*, ID at 18-20, 24, 27, 33. On review, the appellant argues that we should not defer to these credibility findings because they were incomplete or otherwise improper. PFR File, Tab 5 at 8-12. To illustrate her point, the appellant provides several examples. *Id*. at 9-12. Although we have considered each and discuss some below, we do not find any of these credibility arguments persuasive.

¶17 In her first example of alleged improprieties surrounding the administrative judge's credibility findings, the appellant discusses her allegation that the DCRD Chief committed a battery on the appellant during a meeting in February 2016. *Id*. at 9. The administrative judge found that the appellant's disclosure of this incident was not protected because a reasonable person in her position could not conclude that the DCRD Chief committed a battery. ID at 72-73. The appellant argues that, because the DCRD Chief refused to provide any testimony about the incident,[7] it was a gross abuse of discretion for the administrative judge to conclude that the DCRD Chief's contact with the appellant was a natural or reflexive action that she may not have remembered. *Id*. (citing ID at 71-72). We disagree.

---

[7] The DCRD Chief refused to testify about the alleged battery, asserting her Fifth Amendment right against self-incrimination. Hearing Transcript, Day 6 at 163-65, 170 (testimony of the DCRD Chief). As a result, the administrative judge made an adverse inference that the DCRD Chief touched the appellant and the appellant did not consent to the touching. ID at 71-72.

¶18        Notwithstanding the absence of direct testimony from the DCRD Chief, the administrative judge properly relied on other witnesses' testimony and documentary evidence in making her findings.  ID at 70-73.  Most notably, the agency's investigative report and the FPS report both indicate that the DCRD Chief denied touching the appellant at all, IAF, Tab 61 at 52, Tab 62 at 20-21, while two third-party witnesses recalled the DCRD Chief lightly touching or tapping the appellant on the shoulder to get her attention, without any force, as part of a routine conversation, IAF, Tab 62 at 20; Hearing Transcript, Day 4 (HT4) at 30 (testimony of the appellant's former co-worker).  Accordingly, the record reflects that the administrative judge considered the relevant evidence, drew appropriate inferences, and made a reasoned conclusion concerning the nature of the touching, which we will not disturb.  ID at 70-74; *see, e.g.*, *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶19        The appellant's next example is unpersuasive for similar reasons.  The appellant argues that the administrative judge abused her discretion and inserted herself as a fact witness by concluding that a mistake in one of the appellant's performance appraisals—rating her as meeting expectations in a category for which she should have received no rating due to her limited work—was likely inadvertent.  PFR File, Tab 5 at 9 (referencing ID at 23).  But again, the administrative judge's findings are based on other evidence, appropriate inferences, and reasoned conclusions about the circumstances at hand.  *See, e.g.*, *Crosby*, 74 M.S.P.R. at 105-06.

¶20        Most of the appellant's remaining examples involve the ORI Director and the administrative judge's determination, based in part on demeanor, that he testified credibly.  PFR File, Tab 5 at 10-11 (referencing ID at 20, 49).  In one,

the appellant argues that when asked a particular yes-or-no question during the hearing, the ORI Director provided a 6-minute answer that was neither concise nor unequivocal. PFR File, Tab 5 at 11 (referencing Hearing Transcript, Day 2 (testimony of the ORI Director)). In another, the appellant argues that when asked another yes-or-no question during the hearing, the ORI Director provided a 2-minute answer that was not straightforward. *Id*. These are not sufficiently sound reasons for us to overturn the administrative judge's credibility findings. *See Brough v. Department of Commerce*, 119 M.S.P.R. 118, ¶ 6 (2013) (identifying circumstances in which there are sufficiently sound reasons to overturn an administrative judge's demeanor-based credibility findings as including when those findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole).

The appellant failed to prove that Disclosures 1, 5, 7-14, 19-21, 23-26, and 28-32 were protected.

¶21        After an appellant establishes jurisdiction over her IRA appeal, she is entitled to a hearing at which she must prove the following by preponderant evidence: (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8), or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). 5 U.S.C. § 1221(e)(1); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). If the appellant meets that burden, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity. 5 U.S.C. § 1221(e); *Salerno*, 123 M.S.P.R. 230, ¶ 5.

¶22        A protected disclosure is a disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *Bradley v.*

*Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 7 (2016). The proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the disclosure evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8). *Bradley*, 123 M.S.P.R. 547, ¶ 7.

¶23     In this case, the administrative judge examined 32 alleged disclosures and found that the appellant met her burden of proof for Disclosures 2-4, 6, 15-18, 22, and 27, but not Disclosures 1, 5, 7-14, 19-21, 23-26, and 28-32. ID at 17-79, 88. On review, the appellant presents arguments about several of her alleged disclosures, both ones the administrative judge found protected and ones as to which the administrative judge found the appellant failed to meet her burden. PFR File, Tab 5 at 12-38.

¶24     We first consider the disclosures that the administrative judge did not find protected, i.e., Disclosures 1, 5, 7-14, 19-21, 23-26, and 28-32. Of those, the appellant presents arguments about only Disclosures 1, 8, 10-14, 23-26, 28-32, so this decision will be similarly focused.[8]

*Disclosure 1*

¶25     In Disclosure 1, which reportedly occurred during conversations in both August 2005 and October 2010,[9] the appellant asserted that the ORI Director manipulated the hiring process to select a particular person over the appellant for a vacancy in 2005. IAF, Tab 57 at 11-13. Although the appellant alleged that

---

[8] The appellant's petition for review contains no arguments about Disclosures 5, 7, 9, or 19, while specifically withdrawing Disclosures 20 and 21. PFR File, Tab 5 at 29.

[9] In a prehearing summary, the administrative judge found that the appellant nonfrivolously alleged that she made this disclosure in both 2005 and 2010, to differing recipients, and exhausted the same with OSC. IAF, Tab 74 at 3-4. However, as the appellant correctly noted, the administrative judge referenced only the October 2010 date in the initial decision. PFR File, Tab 5 at 13-14; ID at 17. Nevertheless, we find this oversight immaterial. The differing dates and recipients have no bearing on the appellant's failure to prove that this disclosure was protected.

this disclosure revealed a violation of law or abuse of authority, the administrative judge concluded that she failed to meet her burden of proof. ID at 17-21. In short, the administrative judge found that the appellant did not have a reasonable belief that she was making a protected disclosure because her disclosure was based on pure speculation, unsupported by evidence. ID at 19-21.

¶26    On review, the appellant argues that the administrative judge improperly required that she prove an actual violation of law or abuse of discretion, PFR File, Tab 5 at 13, but the record reflects otherwise. The administrative judge explicitly relied on the reasonable belief standard. ID at 21; *see supra*, ¶ 21. The appellant also suggests we should overturn the administrative judge's determination that the ORI Director was more credible than the appellant regarding their alleged discussions about the vacancy and the propriety of the hiring process. PFR File, Tab 5 at 14-15; *see* ID at 19-20. In doing so, the appellant argues that the administrative judge failed to mention all of the evidence and *Hillen* factors that might be relevant in deciding which witness to believe. PFR File, Tab 5 at 14-15. But an administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 14 (2015), *aff'd per curiam,* 652 F. App'x 971 (Fed. Cir. 2016). Not specifically discussing every evidentiary matter or credibility factor does not mean that an administrative judge failed to consider them. *Id*. We discern no basis for disturbing the administrative judge's well-reasoned credibility findings or her conclusion that Disclosure 1 is not protected.

*Disclosure 8*

¶27    In Disclosure 8, conversations and follow-up emails from November 2013, the appellant disclosed various ways in which the DCRD Chief and the ORI Director were treating her. IAF, Tab 57 at 21; *see* IAF, Tab 59 at 73-74. The administrative judge summarized the disclosure as including allegations that the DCRD Chief was micromanaging the appellant; the DCRD Chief was criticizing

her work and productivity in a way that the appellant found abusive and intimidating; the ORI Director enabled the DCRD Chief's behavior by ignoring the appellant's complaints and not allowing the appellant to transfer; and both the DCRD Chief and the ORI Director were issuing punitively low performance ratings while also covering up an altercation[10] between the appellant and a coworker from the year before.  ID at 30-31; *see, e.g.*, IAF, Tab 59 at 73-74.

¶28     One of the categories of wrongdoing specified in section 2302(b)(8) is an abuse of authority.  *See* 5 U.S.C. § 2302(b)(8)(A)(ii).  An abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons.  *Pasley v. Department of the Treasury*, 109 M.S.P.R. 105, ¶ 18 (2008).  There is no de minimis standard for abuse of authority as a basis of a protected disclosure.  *Id.* Furthermore, the Board has recognized that harassment or intimidation of other employees may constitute an abuse of authority.  *E.g.*, *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 14 (2015); *Pasley*, 109 M.S.P.R. 105, ¶ 18.  A supervisor's use of influence to denigrate other staff members in an abusive manner and to threaten the careers of staff members with whom he disagrees constitutes abuse of authority.  *Pasley*, 109 M.S.P.R. 105, ¶ 18.

¶29     After recognizing that harassment by a supervisor may constitute an abuse of authority, the administrative judge considered the evidence of record and concluded that the appellant failed to prove that Disclosure 8 was protected.  ID at 31-39.  She acknowledged shortcomings in the DCRD Chief's management style, ID at 33-34, and the appellant's subjective belief that she was the subject of harassment, ID at 30-33.  However, the administrative judge also recognized the appellant's role in the contentious relationship, as she approached even normal supervisory instructions with suspicion and hostility.  ID at 34-35.  Ultimately, the administrative judge found that a difficult working relationship was

---

[10] This altercation is also the subject of Disclosure 4, which is discussed below.

exacerbated by the DCRD Chief's style of supervision, but neither her behavior, nor that of her supervisor—the ORI Director—constituted harassment or a hostile work environment, i.e., an abuse of authority or other protected category of wrongdoing. ID at 35-38. The administrative judge, therefore, concluded that the appellant failed to prove that she reasonably believed Disclosure 8 was protected. ID at 39.

¶30    The appellant's arguments on review largely mischaracterize the administrative judge's analysis of Disclosure 8. For example, the appellant asserts that the administrative judge mistakenly imposed a de minimis threshold when considering whether Disclosure 8 revealed an abuse of authority. PFR File, Tab 5 at 17. In fact, the initial decision repeatedly notes that there is no de minimis threshold in the context of disclosures of an abuse of authority, and we discern no analysis in the decision reflecting otherwise. *See* ID at 18, 25. The appellant also asserts that the administrative judge improperly relied on a "disinterested observer" standard rather than the standard of a disinterested observer with knowledge of the essential facts known to the appellant. PFR File, Tab 5 at 17. Again, the administrative judge repeatedly cited the appropriate standard in determining whether the appellant had a reasonable belief about her disclosures: a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant. *E.g.*, ID at 17, 21, 27. While she used the shorthand "disinterested observer" at times, it is apparent that the administrative judge applied the proper standard throughout.

¶31    The appellant's other arguments concerning Disclosure 8 reflect disagreement with the administrative judge's credibility findings about the nature of the appellant's conduct and that of her chain of command. PFR File, Tab 5 at 18-20. We do not find her arguments persuasive. *See, e.g.*, *Mithen*, 122 M.S.P.R. 489, ¶ 14; *Crosby*, 74 M.S.P.R. at 105-06.

*Disclosure 10*

¶32    In Disclosure 10, a February 2014 email, the appellant reportedly disclosed that the DCRD Chief was preventing her from doing her job and the ORI Director was refusing to correct the DCRD Chief's behavior. IAF, Tab 57 at 23. The actual email chain at issue shows that the DCRD Chief emailed the appellant detailed instructions for some work assignments. IAF, Tab 27 at 141. The appellant then forwarded that email to the ORI Director, suggesting the email showed that the DCRD Chief was unnecessarily micromanaging her. *Id*. The appellant commented that she did not understand why this "untenable situation" was never addressed, and asked the ORI Director to do so or else she would seek help elsewhere. *Id*.

¶33    The administrative judge found that this, Disclosure 10, was not protected. ID at 41-44. Similar to her reasoning for Disclosure 8, she found that the particular email at issue and others around the same period reflected the appellant's hypersensitivity to basic supervision, not harassment by her supervisory chain or any other wrongdoing protected under section 2302(b)(8). *Id*.; *see* IAF, Tab 27 at 140-44. On review, the appellant's arguments follow those discussed above, with Disclosure 8. According to the appellant, the administrative judge improperly applied a de minimis standard when considering whether Disclosure 10 revealed an abuse of discretion, PFR File, Tab 5 at 20-21, yet we discern no error in the legal standards applied. The appellant also attempts to further contextualize Disclosure 10, in support of an argument that she was disclosing harassment that constituted an abuse of authority. *Id*. at 21-22. But again, the appellant's arguments amount to disagreement with the administrative judge's findings of fact and well-reasoned credibility analysis regarding the interactions and working relationship between the appellant, the DCRD Chief, and the ORI Director. That disagreement is unavailing.

*Disclosures 11-12*

¶34    In Disclosures 11-12, emails from March 2014, the appellant disclosed that the DCRD Chief was harassing her, making damaging statements about her, and interfering with her part-time detail assignment, while the ORI Director continued to allow it.  IAF, Tab 27 at 149, 153-54, Tab 59 at 80; *see* IAF, Tab 57 at 24.  The administrative judge found that these disclosures were not protected.  ID at 44-48.  Generally speaking, she found that which the appellant characterized as harassing behavior or improper interference with her detail assignment was actually professional and appropriate behavior on the part of the DCRD Chief.  *Id*.

¶35    On review, the appellant reasserts that she had a reasonable belief that she was disclosing an abuse of authority.  PFR File, Tab 5 at 22-24.  She again argues that the administrative judge viewed the disclosures and allegations of harassment out of context, while also erroneously applying a de minimis standard.  *Id*. at 23-24.  Once more, we disagree.  Although the appellant may have subjectively believed that she was disclosing an abuse of authority, she has not proven that her belief was reasonable.  To illustrate, one of the emails at issue is a message from the DCRD Chief to the appellant discussing a pending assignment and an upcoming one, while alluding to the appellant either having a preference for or performing better when focusing on just one assignment at a time.  IAF, Tab 27 at 149.  The appellant's response, just minutes later, accused the DCRD Chief of making "false and damaging statements about [her] skills and capabilities."  *Id*. Having reviewed this email and the other materials the appellant identified, we agree with the administrative judge.  What the appellant casts as abuses of authority would appear to the reasonable person to be quite ordinary and appropriate management of a subordinate.  *See* IAF, Tab 27 at 149, 153-54, Tab 59 at 80.

*Disclosure 13*

¶36    In Disclosure 13, a June 2014 email, the appellant disclosed that the DCRD Chief had harassed the appellant, culminating with the DCRD Chief pursuing the

appellant through the office, raising her voice, cornering the appellant, and physically intimidating her. IAF, Tab 27 at 221; *see* IAF, Tab 57 at 25. The administrative judge found that Disclosure 13 was not protected. ID at 48-50. In short, she found that there was an encounter with unprofessional behavior by both the appellant and the DCRD Chief—the appellant yelled at the DCRD Chief before walking out of her office, after which the DCRD Chief responded by angrily following the appellant to a copy room, where she pointed her finger at the appellant during a heated discussion. *Id*. However, the administrative judge concluded that the appellant failed to meet her burden of proving that the matter disclosed was one that a reasonable person in her position would believe evidenced an abuse of authority or any of the other categories of wrongdoing protected in section 2302(b)(8). *Id*.

¶37 On review, the appellant reiterates that the DCRD Chief angrily followed her through the office, against the appellant's wishes, and shook her finger at the appellant. PFR File, Tab 5 at 24-25. She also asserts that the agency's workplace violence policy specifically prohibits following and other intimidating conduct. *Id*. at 24 (citing IAF, Tab 12 at 54-55). But the policy actually states that "[p]hysical intimidation or harassment *may* include holding, impeding or blocking movement, following, stalking, touching, or any other inappropriate physical contact or advances." IAF, Tab 12 at 55 (emphasis added). In other words, the context matters; following someone is not a per se violation of the agency's workplace violence policies. After reviewing the administrative judge's analysis, we find no basis for disturbing her well-reasoned findings. While the incident seemingly involved unprofessional behavior from both parties, the appellant failed to prove that she reasonably believed she was disclosing the type of wrongdoing protected under section 2302(b)(8).

*Disclosure 14*

¶38 In Disclosure 14, a November 2014 email, the appellant referred to Disclosure 13, asserted that she was never contacted about the matter, and

suggested that the agency had not conducted a legitimate inquiry. IAF, Tab 12 at 88. During adjudication of this appeal, the appellant characterized this disclosure as revealing that the agency was covering up the incident. *E.g.*, IAF, Tab 57 at 26-27. The administrative judge found that Disclosure 14 was not protected. ID at 50-52. After recognizing that the investigation was delayed for workload reasons, the administrative judge concluded that the appellant failed to prove that a disinterested observer would have found that disclosure of the delay reflected a cover-up or any other wrongdoing protected under the whistleblower statute. *Id*.

¶39        On review, the appellant characterizes her disclosure as revealing that the ORI Director abused his authority by refusing to respond to Disclosure 13. PFR File, Tab 5 at 26. Like the administrative judge, we are not persuaded. While the appellant may have speculated that the agency was acting nefariously because she had yet to be contacted about the agency's investigation, she has not proven that she reasonably believed the agency was engaging in an abuse of authority or other protected category of wrongdoing. *See Pulcini v. Social Security Administration*, 83 M.S.P.R. 685, ¶ 13 (1999) (finding that a disclosure of an agency's alleged delay in initiating corrective action against a coworker did not evidence what a disinterested observer in an appellant's position could reasonably believe was an abuse of authority), *aff'd per curiam*, 250 F.3d 758 (Fed. Cir. 2000) (Table).

           *Disclosures 23-26*

¶40        In Disclosures 23-26, a series of emails from January and February 2016, the appellant disclosed that the DCRD Chief continued to harass the appellant by misrepresenting their work encounters, challenging her time and attendance, and falsely accusing her of being absent without leave. IAF, Tab 11 at 22, Tab 27 at 184, 270-72, 281-83, Tab 57 at 41-42. For example, after the DCRD Chief sent the appellant an email that seemingly called into question whether the appellant had requested administrative leave for the correct date, the appellant forwarded the email to other agency officials with no text except for the subject line,

"[h]arassment: constantly challenging time keeping and attendance." IAF, Tab 27 at 184. In another example, the DCRD Chief sent the appellant an email indicating that she had not yet heard from the appellant and reminding her that she was required to check in by email first thing in the morning on days away from the office so the DCRD Chief knew who was available for quick turnaround assignments. *Id*. at 283. The appellant forwarded this email and follow-ups, which suggested that the appellant tried to check in but the DCRD Chief did not receive the message. *Id*. at 282-83. She characterized the DCRD Chief's comment that, "I have had to check on your attendance once before, so my inquiry was reasonable," and the DCRD Chief's other inquiries into the appellant's attendance as "continuing slander." *Id*.

¶41    The administrative judge found that Disclosures 23-26 were not protected. ID at 65-68. In short, she found a vast disconnect between the DCRD Chief's messages and the appellant's reaction to them. The administrative judge determined that a disinterested observer could not reasonably believe that Disclosures 23-26 revealed harassment or any protected category of wrongdoing. *Id*.

¶42    On review, the appellant reasserts that she had a reasonable belief that her emails were protected. PFR File, Tab 5 at 29-32. Among other things, she argues that the administrative judge erred in crediting the DCRD Chief's testimony, which included an explanation about why she required that all her team members check in on days away from the office for business purposes, and that she felt the need to remind the appellant to check in because the appellant had failed to do so on occasion. *Id*. at 29-30; ID at 67. The appellant has not presented sufficiently sound reasons for disturbing the administrative judge's well-reasoned credibility findings. The appellant also argues that the administrative judge viewed the messages in a vacuum, rather than recognizing that the DCRD Chief constantly challenged her time and attendance as a pretext to provoke the appellant. PFR File, Tab 5 at 30-31. We find no merit to these arguments. On their face, each of

the messages the appellant identified in Disclosures 23-26 share a commonality in that they are professional supervisory messages, despite the appellant's unpersuasive argument that they served some nefarious purpose or were otherwise harassing. The administrative judge expressly considered, and found not credible, the appellant's claims that the DCRD Chief was constantly checking on the appellant and accusing her of leave abuse. ID at 67-68. We discern no basis to disturb these findings. *See Purifoy*, 838 F.3d at 1373.

> *Disclosure 28*

¶43      In Disclosure 28, a February 2016 email, the appellant provided a definition of workplace violence that discusses verbal harassment, along with a copy of *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), with an email subject line of, "Notice: Supervisory Abuse of Authority Manifesting as Workplace Violence." IAF, Tab 61 at 5; *see* IAF, Tab 57 at 43. The administrative judge found that Disclosure 28 appeared to be yet another allegation of harassment by the DCRD Chief and was not protected for the same reasons as her other similar disclosures, such as Disclosures 8, 10-12, and 23-26. ID at 69. On review, the appellant asserts that this disclosure is "protected for the same reasons described above," PFR File, Tab 5 at 32, but we find no basis for concluding, contrary to the administrative judge, that this email contained a protected disclosure. *See Salerno*, 123 M.S.P.R. 230, ¶ 6 (explaining that disclosures must be specific and detailed, not vague allegations of wrongdoing).

> *Disclosures 29-30*

¶44      In Disclosures 29-30, a conversation and follow-up email from February 2016, the appellant disclosed that the DCRD Chief committed a battery on her. IAF, Tab 27 at 192-93; *see* IAF, Tab 57 at 44. The administrative judge found that these disclosures were not protected. ID at 69-73. Most notably, she recognized that third-party witnesses to the incident described the DCRD Chief as lightly touching or tapping the appellant on the shoulder while discussing a

business matter, and the appellant failed to prove that a disinterested observer would have found that this amounted to battery or any other protected category of wrongdoing. *Id*.

¶45 On review, the appellant argues that the administrative judge erroneously focused on the DCRD Chief's intent, rather than whether the appellant had a reasonable belief about her disclosure. PFR File, Tab 5 at 32-33. We disagree. The administrative judge appropriately considered whether a disinterested observer could reasonably conclude that the DCRD Chief had the intent to cause harm or offensive contact, as required for criminal or tortious battery. ID at 72-73; *see Ray v. United States*, 575 A.2d 1196, 1198-99 (D.C. 1990) (explaining that a "completed battery necessarily includes an attempted battery," or assault, and that an assault under the District of Columbia's statutes requires either an intent to injure or a menacing threat); *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007) (defining a tortious battery as "an intentional act that causes a harmful or offensive bodily contact" (citation omitted)). The appellant also suggests that the DCRD Chief's touching both violated the agency's workplace violence policy and amounted to an abuse of authority, as evidenced by the DCRD Chief's initial denial that she touched the appellant at all and the appellant's own view of the touching, given the greater context of constant harassment. *Id*. at 33-35. Again, we are not persuaded. The appellant is essentially asking that we overturn the administrative judge's well-reasoned credibility findings concerning the nature of the touching and whether it was benign, as third-party witnesses described, or something more serious, as the appellant claims. We find no reason to do so.

*Disclosure 31*

¶46 In Disclosure 31, from April 2016, the appellant disclosed that the agency was covering up her reports of harassment and workplace violence by influencing witnesses to the alleged battery by the DCRD Chief. IAF, Tab 12 at 32-34; *see* IAF, Tab 57 at 45. The administrative judge found that Disclosure 31 was not

protected. ID at 74-76. Among other things, she found that the third-party witness with whom the appellant alleged the DCRD Chief tampered credibly denied any improper discussions. ID at 75. She found no other credible evidence to support the appellant's claim. *Id*.

¶47    On review, the appellant again argues that the administrative judge failed to adequately consider whether she had a reasonable belief about her disclosure. PFR File, Tab 5 at 36. We disagree. The administrative judge explicitly relied on the proper standard; she determined not whether the appellant proved the alleged wrongdoing, but whether she had a reasonable belief that she was disclosing the type of wrongdoing protected under the whistleblower statute. ID at 76. The appellant also suggests, again, that we should overturn the administrative judge's well-reasoned credibility findings, this time regarding the third-party witness and her interactions with the DCRD Chief after the alleged battery. PFR File, Tab 5 at 36-37. Yet we find no basis for doing so.

### *Disclosure 32*

¶48    In Disclosure 32, emails from May 2016, the appellant alleged that the agency had been ignoring and covering up her reports of harassment and workplace violence for years, was encouraging "mobbing" behavior from her coworkers, and was denying her opportunities in retaliation for her reports of these matters. IAF, Tab 27 at 302-03; *see* IAF, Tab 57 at 46. The administrative judge found that Disclosure 32 was not protected. ID at 76-79. Among other things, she recognized that the agency conducted investigations in concert with each of the appellant's allegations of battery or attempted battery, and found that the appellant lacked any reasonable basis for concluding that the agency had instead ignored the matters or covered them up. ID at 76-77. The administrative judge further found no merit to the appellant's allegations that the agency was encouraging her coworkers to gang up on her, creating a hostile work environment, or denying her opportunities. ID at 78-79.

¶49    On review, the appellant reasserts that she had a reasonable belief that the agency was covering up her prior reports of harassment and workplace violence, PFR File, Tab 5 at 37-38, but she fails to identify any persuasive evidence that would warrant reversing the administrative judge's findings to the contrary. The appellant also argues that she had a reasonable belief that the agency was violating a specific provision of its workplace violence policy, indicating that management is responsible for investigating acts of violence in a timely manner and providing feedback to employees regarding the outcome of their reports regarding violent or potentially violent incidents. *Id*. at 37; *see* IAF, Tab 27 at 303. However, it appears that the appellant did not advance this theory of her disclosure below. IAF, Tab 57 at 46, Tab 68 at 44. And while the appellant's petition for review contains a link to the workplace violence policy provision she now relies on, she has not identified, nor have we come across, that provision in the voluminous record below. *E.g.*, IAF, Tab 12 at 54-55. Accordingly, we will not consider this argument and evidence any further. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (explaining that the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence); *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (under 5 C.F.R. § 1201.115, the Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence); *see also Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980) (before the Board will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect, and identify the specific evidence in the record which demonstrates the error), *review denied per curiam*, 669 F.2d 613 (9th Cir. 1982).

<u>The administrative judge correctly determined that the appellant met her burden of proof for Disclosures 2-4, 6, 15-18, 22, and 27.</u>

¶50    As mentioned before, the administrative judge found that the appellant met her burden of proving that Disclosures 2-4, 6, 15-18, 22, and 27 were protected. ID at 17-79, 88. Nevertheless, the appellant disputes the administrative judge's findings for some. PFR File, Tab 5 at 12-38. We will briefly discuss each of the disclosures the administrative judge found protected, while addressing any remaining arguments the appellant has presented.

*Disclosure 2—performance rating contrary to agency regulations*

¶51    In Disclosure 2, a conversation from October 2011, the appellant reportedly disclosed that the agency improperly rated her as "meets expectations" in a category for which she was not assigned sufficient work to warrant any rating at all. IAF, Tab 57 at 15; *see* IAF, Tab 27 at 197. The administrative judge found that Disclosure 2 was protected because it revealed a violation of agency regulations about how to treat a rating category when insufficient work was assigned. ID at 21-23. She did not, however, agree with the appellant's argument that Disclosure 2 also evidenced an abuse of discretion or violation of the prohibition against arbitrary action and favoritism set forth in 5 U.S.C. § 2301(b)(8)(A). ID at 23. In short, while the appellant suggested that the ORI Director had acted intentionally, with animus, the administrative judge found it more likely that the agency had inadvertently violated the agency regulation. *Id*.

¶52    Even though the administrative judge found this disclosure protected, the appellant's petition contains an argument, disagreeing with the administrative judge's analysis. The appellant reasserts that Disclosure 2 revealed an abuse of authority and violation of law. PFR File, Tab 5 at 16. Because the administrative judge properly identified this disclosure as protected, the appellant's disagreement as to its characterization does not provide a basis for granting review. *See Hoback v. Department of the Treasury*, 86 M.S.P.R. 425, ¶ 11 (2000) (explaining that appellants need not correctly label the category of wrongdoing

for their disclosure to be protected); *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

### Disclosure 3—inappropriate work requirement

¶53    In Disclosure 3, an August 2012 email, the appellant alleged that the DCRD Chief threatened to require that she, but not her colleagues, produce an advisory opinion every month.  IAF, Tab 59 at 51; *see* IAF, Tab 57 at 16.  The administrative judge found that this disclosure was protected because the appellant had a reasonable belief that the DCRD Chief was abusing her authority. ID at 23-25.

### Disclosure 4—attempted battery by coworker

¶54    In Disclosure 4, a conversation from August 2012, memorialized in an email the next day, the appellant disclosed that a coworker had attempted to commit a battery upon her in the hallway.  IAF, Tab 57 at 17; *see* IAF, Tab 27 at 204. More specifically, the appellant alleged that she and a coworker crossed paths in the office, the coworker attempted to make physical contact with the appellant, and the appellant had to move her arm to try and avoid the contact, yet the coworker's sweater did brush up against the appellant's arm.  IAF, Tab 27 at 204. The administrative judge found that the appellant had a reasonable belief that the coworker had attempted to commit a battery or intimidate the appellant, so this disclosure was protected.  ID at 25-27.

### Disclosure 6—re-disclosing a prior disclosure

¶55    In Disclosure 6, a December 2012 email, the appellant discussed her performance and performance ratings.  IAF, Tab 27 at 207-08; *see* IAF, Tab 57 at 19.  Because one of the assertions in this email mirrored that of Disclosure 2, which was protected, the administrative judge found that Disclosure 6 was similarly protected.  ID at 28-29.

*Disclosures 15-18—re-disclosing prior disclosures*

¶56    While the appellant made most of her prior disclosures to the ORI Director and the DCRD Chief, she turned to different agency officials to make Disclosures 15-18, which largely consisted of re-disclosing matters previously disclosed to others. IAF, Tab 57 at 28-29, 31, 33. The administrative judge did not agree with all of the appellant's arguments concerning these disclosures, but the administrative judge did find that they were protected because the scope of these disclosures included disclosures that she had already deemed protected. More specifically, she found that Disclosures 15, 17, and 18 were protected because they re-disclosed Disclosures 2-4, while Disclosure 16 was protected because it re-disclosed Disclosure 2. ID at 52-58, 88.

¶57    On review, the appellant alleges that the administrative judge mischaracterized the scope of Disclosure 16 as something less than that which was included in Disclosure 15. PFR File, Tab 5 at 27-28. However, Disclosures 15 and 16 had different recipients, and the administrative judge's description of Disclosure 16 was based on the testimony of the only parties to the associated conversation—the appellant and a Deputy Assistant Secretary. ID at 53-54. While the appellant cites to the testimony of an individual that received Disclosure 15, she has failed to show its relevance in determining the content of Disclosure 16. PFR File, Tab 5 at 27-28.

¶58    The appellant also alleges that the administrative judge erred in her analysis of Disclosure 18. PFR File, Tab 5 at 29. Again, the administrative judge found that this disclosure was protected because it included the same matters as Disclosures 2-4. ID at 56-58. However, the appellant argued that Disclosure 18 was also protected because it revealed that a proposed settlement agreement between the agency and the appellant's union would have required that she attend Employee Assistance Program (EAP) counseling, and the appellant believed that provision was both illegal and retaliatory. IAF, Tab 57 at 33; *see* IAF, Tab 13 at 59-60, Tab 27 at 84, 86. The administrative judge found nothing improper

about the proposed settlement provision and further found that the appellant failed to prove that a disinterested observer would reasonably believe that this reflected a violation of law or other protected category of wrongdoing. ID at 56-58. While the appellant disagrees with that assessment and argues that the administrative judge did not adequately focus on whether she had a reasonable belief, PFR File, Tab 5 at 29, we find her arguments unavailing and unpersuasive.

*Disclosure 22—plan to file an OSC complaint*

¶59    In Disclosure 22, a December 2015 email, the appellant stated that she planned to file a complaint with OSC for harassment and the failure to remedy that harassment. IAF, Tab 60 at 49; *see* IAF, Tab 57 at 39. The administrative judge found that Disclosure 22 was protected because it revealed her intent to engage in protected activity under section 2302(b)(9)(A)(i). ID at 64-65. We observe that this activity also expresses an intent to cooperate with or disclose information to OSC, which is activity protected under 5 U.S.C. § 2302(b)(9)(C). The appellant's disclosure created the perception that she intended to engage in protected activity. The perception that an employee engaged in protected activity under section 2302(b)(9)(C) may form the basis of an IRA appeal. *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 12 (2016), *overruled on other grounds by Requena v. Department of Homeland Security*, 2022 MSPB 39.

*Disclosure 27—ignored workplace violence*

¶60    In Disclosure 27, a February 2016 email, the appellant alleged that although she made repeated reports of workplace violence, those reports were still being ignored. IAF, Tab 11 at 87-88; *see* IAF, Tab 57 at 42-43. The administrative judge found that Disclosure 27 was protected because it included a re-disclosure of Disclosure 4. ID at 68, 88. On review, the appellant simply asserts that this disclosure is "protected for the same reasons described above," apparently alluding to some of the arguments she made for earlier disclosures. PFR File,

Tab 5 at 32. We find no basis for disturbing the administrative judge's conclusion that Disclosure 27 is protected because it re-disclosed Disclosure 4.

The administrative judge correctly identified the personnel actions at issue.

¶61 As previously stated, the administrative judge found that the appellant was subject to four relevant personnel actions—her FY 14 performance appraisal, the denial of transfer requests between August 2012 and November 2014, a significant change in working conditions in or around February 2016 when she was placed under the supervision of a different agency official, and a February 2016 letter of reprimand—but no others. ID at 80-86, 88. On review, the appellant reasserts that she was subject to additional personnel actions. PFR File, Tab 5 at 35-48. We are not persuaded.

*Cursory narratives in FY 14 performance appraisal*

¶62 The appellant first argues that the agency provided cursory rather than substantive narratives within her FY 14 performance appraisal, and that amounted to a separate personnel action. PFR File, Tab 5 at 35-36; *see* IAF, Tab 14 at 27-37, 60-61. But again, the administrative judge found that the performance appraisal itself was a personnel action cognizable in this appeal. ID at 80-81. The appellant has failed to identify anything to support her argument that the level of detail in the performance appraisal narratives constitutes a separate personnel action within the meaning of the whistleblower statute. *See* 5 U.S.C. § 2302(a)(2)(A)(viii) (defining "personnel action" as including, *inter alia*, a performance evaluation).

*Threats of counseling*

¶63 The appellant next argues that the agency twice threatened counseling or EAP referrals, and those threats constitute personnel actions. PFR File, Tab 5 at 39. The first purported threat occurred during a conversation with the DCRD Chief when, according to the appellant, the DCRD Chief indicated that she was going to send the appellant to counseling. *E.g.*, IAF, Tab 13 at 62. What the

appellant characterizes as the second threat was the provision of a grievance settlement agreement of the appellant's FY 14 performance appraisal. *Id*. at 59. As we previously discussed with Disclosure 18, this provision would have required that she undergo a certain number of EAP sessions. *Id*.

¶64 The administrative judge considered the arguments but found that the appellant failed to prove by preponderant evidence that the agency's actions amounted to threats of a personnel action. ID at 81-83 (referencing 5 U.S.C. § 2302(a)(2)(A)(x) (defining "personnel action" as including "a decision to order psychiatric testing or examination")). She explained that the appellant's own testimony and her email messages about the DCRD Chief's reference to counseling was somewhat inconsistent and gave no indication that the DCRD Chief was actually threatening to order the appellant to undergo psychiatric testing or examination. ID at 82. The administrative judge further explained that the agency's subsequent proposal for EAP counseling stemmed from what they perceived as emotional distress from the appellant, but that cannot be equated with a decision to order psychiatric testing or examination, and there was no credible evidence that agency officials threatened the appellant with psychiatric testing or examination during the period at issue. ID at 82-83. While we recognize the appellant's disagreement and assertion that we should adopt a broader interpretation of "personnel action," we find no basis for disturbing the administrative judge's conclusion, which is grounded in explicit and implicit fact findings and credibility determinations about the motivations of agency officials. *Cf. Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 34-35 (2013) (finding that an offer or recommendation to undergo a psychiatric examination is an implicit order within the scope of section 2302(a)(2)(A)(x) when accompanied by a threat of repercussions if declined).

*April 2015 denied transfer request*

¶65 The next personnel action reasserted by the appellant is an alleged denial of an additional transfer request in April 2015, after the ones recognized by the

administrative judge. PFR File, Tab 5 at 39-40. The administrative judge found no credible evidence that the appellant requested a transfer from the ORI Director or the Deputy Assistant Secretary in April 2015. ID at 83. On review, the appellant has directed us to April 2015 emails showing that two other agency officials—the Office of Program Planning Evaluation Management (OPPEM) Director and a Human Resources official—discussed the possibility of a transfer at that time, but the OPPEM Director determined that no transfer was available. *See* IAF, Tab 62 at 66-68. However, even if this did constitute an additional personnel action, we found nothing that would satisfy the remainder of the appellant's burden, i.e., that her protected disclosures were a contributing factor in the April 2015 transfer denial. She has not, for example, directed us to specific evidence showing that the OPPEM Director had actual or constructive knowledge of the appellant's protected disclosures when he denied the transfer request.[11] *See Weaver*, 2 M.S.P.R. at 133.

> *Hostile work environment*

¶66    The appellant's final alleged personnel action reasserted on review is what she characterizes as a significant change in working conditions in the form of the DCRD Chief and the ORI Director creating a hostile work environment from 2014 to 2016. PFR File, Tab 5 at 40-48; *see, e.g.*, IAF, Tab 68 at 44-48. The administrative judge found that the appellant failed to prove that she was subject to a "significant change in working conditions" in this regard. ID at 85-86. In short, she found that the appellant's allegations were largely unsubstantiated and lacking in the frequency and severity necessary to constitute a hostile work environment. *Id.*

---

[11] We recognize that other individuals, including the ORI Director and the DCRD Chief, who knew of the appellant's prior protected activity, were ultimately included in the email chain discussing this transfer. However, the evidence the appellant directed us to suggests they were only included after the OPPEM Director determined that no transfer was available. IAF, Tab 62 at 66-68.

¶67     On review, the appellant asserts that the administrative judge improperly applied Title VII hostile work environment standards. PFR File, Tab 5 at 42. In fact, the administrative judge did reference Title VII hostile work environment standards when discussing whether the appellant's disclosures of a hostile work environment were protected, *e.g.*, ID at 31, but her discussions of whether the appellant was subject to a "personnel action" in the form of a hostile work environment cited no standard other than the language of section 2302(a)(2)(A)(xii), ID at 85-86.

¶68     Under the Whistleblower Protection Act (WPA), including as amended by the Whistleblower Protection Enforcement Act of 2012, "personnel action" is defined as including a "significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii); *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 14. We recently clarified that, while the term "hostile work environment" has a particular meaning in other contexts, allegations of a hostile work environment may establish a personnel action under the WPA only if they meet the statutory criteria, i.e., constitute a significant change in duties, responsibilities, or working conditions. *Id.*, ¶ 16. We further explained that although a "significant change" in working conditions should be interpreted broadly to include harassment and discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by section 2302(a)(2)(A)(xii). *Id*.

¶69     The initial decision in the instant appeal preceded our decision in *Skarada*. We therefore modify the initial decision to incorporate the aforementioned standard. However, as further detailed below, we find no basis for disturbing the administrative judge's findings.

¶70    The appellant argues that the administrative judge failed to recognize or appreciate the abuse she suffered during the relevant period when considering whether the appellant was subject to this alleged personnel action. PFR File, Tab 5 at 40-48. However, her arguments largely reflect disagreement with the administrative judge's findings, which are grounded in well-reasoned credibility determinations. For example, the appellant once again refers to the alleged battery by the DCRD Chief to support her claim that she was subject to a cognizable personnel action, but the administrative judge found that there was no such battery. *Compare id*. at 40-41, *with* ID at 69-73. The appellant also refers to cover-ups that followed whenever she filed a complaint of violence, PFR File, Tab 5 at 45-47, but the administrative judge found that the agency conducted investigations after each complaint and the appellant's cover-up allegations were unsupported, *e.g.*, ID at 38, 51, 75, 77. The appellant's other allegations, such as ones of "mobbing" behavior, fare no better. *Compare* PFR File, Tab 5 at 43-44, *with* ID at 38, 76, 78-79.

¶71    The appellant also argues that the administrative judge failed to acknowledge pertinent evidence, such as evidence that reflected a consciousness of guilt on the parts of the DCRD Chief and the ORI Director, along with testimonial evidence from the appellant herself. PFR File, Tab 5 at 41-43. But we discern no meaningful omission in the administrative judge's extensive analysis. The record included thousands of pages of evidence and 7 days of hearing testimony. As we previously noted, an administrative judge's failure to mention all of the evidence does not mean that she did not consider it in reaching her decision. *Mithen*, 122 M.S.P.R. 489, ¶ 14.

¶72    Next, the appellant suggests that the administrative judge exhibited bias by blaming the appellant for the agency's harassment and filling the decision with gratuitous and unsupported attacks on the appellant's character without ever mentioning evidence of her positive attributes and work contributions. PFR File, Tab 5 at 41 n.11. But we find no evidence of bias. *See Bieber v. Department of*

*the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (recognizing that an administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible" (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))). We instead find that the administrative judge properly analyzed the relevant issues, which necessarily required discussions of the appellant's behavior, particularly in response to supervision. *E.g.*, ID at 41-44. In fact, one of the gratuitous attacks the appellant cites is actually the administrative judge's mere recounting of the appellant's own allegations. *Compare* PFR File, Tab 5 at 41 n.11 (alleging that the administrative judge described the appellant as, *inter alia*, "unproductive"), *with* ID at 3, 23, 82 (recounting the appellant's allegations that the DCRD Chief accused the appellant of being unproductive).

¶73    Based on the aforementioned standard from *Skarada*, and the administrative judge's findings of fact, with which we agree, we conclude that the appellant failed to prove that she was subjected to a personnel action in the form of harassment or a hostile work environment between 2014 and 2016.

The administrative judge correctly analyzed the contributing factor criterion.

¶74    We now turn to the final element of the appellant's burden: proving that her protected disclosures—Disclosures 2-4, 6, 15-18, 22, and 27—were a contributing factor in the cognizable personnel actions. To prove that a disclosure was a contributing factor in a personnel action, the appellant need only demonstrate that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 18 (2015). An appellant may meet this burden through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude

that the disclosure was a contributing factor in the personnel action, i.e., the knowledge/timing test. *Id*.; *see* 5 U.S.C. § 1221(e)(1).

¶75    For the first personnel action, the appellant's FY 14 performance appraisal, the administrative judge found that the appellant proved that Disclosures 15, 17, and 18 were contributing factors.  ID at 89.  For the second personnel action, the denial of transfer requests, the administrative judge found that the appellant proved that Disclosures 3-4, and 6 were contributing factors for those requests that occurred between August 2012 and November 2014, while Disclosure 16 was a contributing factor for just the November 2014 transfer request.  *Id*.  For the third personnel action, a significant change in working conditions by being placed under the supervision of a different agency official in or around February 2016, the administrative judge found that the appellant proved that Disclosures 15, 17, 18, and 22 were contributing factors.  *Id*. at 89-90.  For each of these, the administrative judge found that the appellant satisfied the knowledge/timing test.

¶76    For the fourth and final personnel action, a February 2016 letter of reprimand, the administrative judge found that the DCRD Chief issued the reprimand, but she only knew of the protected disclosures that occurred more than 3 years earlier, such that the knowledge/timing test was not satisfied.  *Id*. at 90.  Nevertheless, the administrative judge further found that the appellant proved the contributing factor criterion because other agency officials who were directly involved in the reprimand knew of more recent protected disclosures that did satisfy the knowledge/timing test.  *Id*.  Although she did not explicitly identify those more recent disclosures, the administrative judge appeared to be referencing Disclosures 15 through 18 and 22.

¶77    On review, the appellant asserts that "[i]t is absurd" for the administrative judge to conclude that the DCRD Chief had no knowledge of the appellant's disclosures because the ORI Director forwarded all of the appellant's complaints to the DCRD Chief.  PFR File, Tab 5 at 48.  But in doing so, the appellant has

neither identified to which disclosures she is referring, nor cited any evidence of record.

¶78    The appellant also suggests that the administrative judge considered the knowledge/timing test but failed to consider whether there was other circumstantial evidence that could satisfy the contributing factor criterion. PFR File, Tab 5 at 48. She then summarily states that she set forth contributing factor outlines in her submissions. *Id.* (citing IAF, Tab 1 at 38-59, Tab 57 at 47-56). Yet the materials cited repeatedly refer to the knowledge/timing test, without any substantive argument that the contributing factor criterion is met through other means. *See, e.g.*, IAF, Tab 1 at 39, 47, 54, Tab 57 at 53-54. Accordingly, we find no reason to reach a conclusion different than the administrative judge.

<u>The agency met its burden of proving that it would have taken the same actions in the absence of the appellant's protected disclosures.</u>

¶79    Because the appellant met her burden of proving that some of her protected disclosures were contributing factors in personnel actions, we now turn to the question of whether the agency proved, by clear and convincing evidence, that it would have taken the same personnel actions in the absence of the protected disclosures. 5 U.S.C. § 1221(e)(1)-(2); *Salerno*, 123 M.S.P.R. 230, ¶ 5.

¶80    In determining whether the agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of protected activity, the Board generally will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency's officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in protected activity but who are otherwise similarly situated. *See Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board must consider all pertinent record evidence in making this determination. *Whitmore*, 680 F.3d at 1368. The Board does not view these factors as discrete elements, each of which the agency

must prove by clear and convincing evidence. *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 11 (2010). Rather, the Board will weigh the factors together to determine if the evidence is clear and convincing as a whole. *Id*.

¶81 The administrative judge conducted an extensive analysis of the first *Carr* factor, finding that the agency's evidence in support of each of its personnel actions was strong. ID at 91-95. For the second *Carr* factor, she found that the agency did not possess a particularly strong motive to retaliate. ID at 95-96. And for the third *Carr* factor, the administrative judge concluded that the agency failed to present any comparator evidence, which weighed slightly against the agency. ID at 96. The administrative judge considered the individual the appellant identified as a potential comparator concerning the denied transfer requests but found that her situation was distinguishable. *Id*. Weighing these factors together, the administrative judge concluded that the agency met its burden. ID at 97. On review, the appellant asserts that the administrative judge grossly abused her discretion in reaching these findings, reflecting the administrative judge's disdain for employees. PFR File, Tab 5 at 48-61. We disagree.

¶82 We need not address many of the appellant's arguments about the strength of the agency's evidence as to personnel actions for which she failed to meet her burden. For example, the appellant argues that the agency did not meet its burden regarding her April 2015 transfer request; a significant change in working conditions by way of harassment and hostility; along with the Fiscal Year 2005 and 2011 to 2013 performance appraisals. PFR File, Tab 5 at 52-53, 55-57, 60-61. The agency had no burden of proof for those matters because the appellant failed to present a prima facie case of whistleblower reprisal for the same. *See Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014) (recognizing that the Board may not proceed to the clear and convincing test unless it has first made a finding that the appellant established his prima facie

case, i.e., that he made a protected disclosure that was a contributing factor in a personnel action), *aff'd per curiam*, 623 F. App'x 1016 (Fed. Cir. 2015).[12]

¶83      The appellant's remaining arguments about the agency's burden are unavailing because they generally reflect disagreement with the administrative judge's findings of fact that are grounded in credibility determinations or they erroneously fault the administrative judge for not discussing every piece of evidence or theory.  For example, in response to the administrative judge determining that relevant officials did not feel particularly threatened by the appellant's allegations—a finding implicitly rooted in credibility determinations —the appellant claims there was no evidence of the same.  PFR File, Tab 5 at 49 (referencing ID at 95-96).  On that same point, the second *Carr* factor, the appellant also suggests that the administrative judge should have considered how the effort expended on investigations into the appellant's complaints may have created a motive to retaliate against her.  PFR File, Tab 5 at 50.  But again, the appellant has failed to present any persuasive basis for us to disturb the administrative judge's well-reasoned credibility findings, and the administrative judge's failure to mention every piece of evidence in the voluminous record or every alternative theory the appellant has for the agency's actions does not mean

---

[12] The U.S. Court of Appeals for the Seventh Circuit has disagreed with the Board's decision in *Clarke*.  *Delgado v. Merit Systems Protection Board*, 880 F.3d 913, 924-25 (7th Cir. 2018).  However, the court's disagreement was on other grounds and does not implicate the holding at issue here.  *Id*.

that the administrative judge failed to consider them.[13] *See Mithen*, 122 M.S.P.R. 489, ¶ 14.

¶84    We are mindful of the requirement that the Board evaluate all of the pertinent evidence in determining whether an agency has met its clear and convincing burden. *Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶ 22 (2016). Here, the administrative judge's thorough initial decision reflects that she did so. *See id.*, ¶¶ 14, 22-23 (finding that an administrative judge's thorough initial decision showed that she closely listened to the testimony of witnesses on both sides, including those who bolstered the appellant's claim of whistleblower reprisal, despite the administrative judge's failure to make explicit findings on all the *Carr* factors).

¶85    In conclusion, we agree with the administrative judge that the appellant met her burden regarding some disclosures and personnel actions, but the agency met its burden as well, such that corrective action is not warranted.

---

[13] To the extent the administrative judge failed to specifically address any professional or institutional motive to retaliate, we find that she made implicit credibility-based findings that such motive was not strong. *See, e.g.*, *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶¶ 14-15 (recognizing that the Board should avoid an overly restrictive analysis of the motive to retaliate and should consider whether officials possessed a professional retaliatory motive due to disclosures implicating agency officials and employees in general); *Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29 (2022) (recognizing that the Board should avoid an overly restrictive analysis of the motive to retaliate and finding that an appellant's disclosures reflected poorly on agency officials as representatives of the agency's general institutional interests, even though they were not personally implicated by the disclosures). Among other things, the administrative judge ultimately concluded that the appellant's disclosures were "almost entirely focused on her own experiences working under" the DCRD Chief and the ORI Director, that they did not feel "particularly threatened" by her allegations, and that other agency officials made "good faith efforts to resolve her complaints." *E.g.*, ID at 95-96. These stated facts and the administrative judge's well-reasoned decision reflect little professional or institutional motive to retaliate against the appellant.

## NOTICE OF APPEAL RIGHTS[14]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[14] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[15]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[15] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.